**2026 UT App 118**

### THE UTAH COURT OF APPEALS

SAMUEL TAYLOR,
Appellant,
*v.*
ANNE LAWLOR AND KEVIN LAWLOR,
Appellees.

Opinion
No. 20251097-CA
Filed August 6, 2026

Third District Court, Salt Lake Department
The Honorable Linda M. Jones
No. 250904970

Fabiana Wells, Attorney for Appellant

Steven H. Bergman and Alexis T. Palmer,
Attorneys for Appellees

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES JOHN D. LUTHY and AMY J. OLIVER concurred.

HARRIS, Judge:

¶1 After Samuel Taylor sued Anne Lawlor and Kevin Lawlor (collectively, the Lawlors), the Lawlors filed a motion to dismiss, and Taylor filed a memorandum in opposition to the Lawlors' motion. The district court struck Taylor's opposition, stating simply that it "failed to comply with the Utah Rules of Civil Procedure," and the court gave Taylor a few days to file a compliant document. Taylor then filed an amended memorandum, but the court again rejected it for the same stated reason. And after Taylor filed a motion seeking clarification as to which rules the court believed had been violated, the court dismissed Taylor's complaint altogether, granting the Lawlors' motion because it was effectively unopposed.

¶2      Taylor appeals the district court's orders rejecting his memoranda and dismissing his complaint, arguing that the court improperly applied the rules in doing so. We agree with Taylor, and we reverse both of the court's orders rejecting Taylor's memoranda as well as its order dismissing Taylor's complaint.

BACKGROUND

¶3      Taylor filed a complaint (Complaint) against the Lawlors, asserting fifteen causes of action. The Lawlors later filed a motion to dismiss (Motion), arguing that the Complaint should be dismissed for failing to comply with "[r]ules 8, 9, 12, and 17 of the Utah Rules of Civil Procedure." Among other things, the Lawlors argued that Taylor lacked standing to bring some of his claims and that the rest should be dismissed for failure to state a claim upon which relief could be granted.

¶4      Taylor timely filed a memorandum in opposition (Opposition) to the Motion, asking the court to deny the Motion because "[t]he Complaint me[t] Utah's pleading requirements by laying out specific facts for each cause of action." The Opposition contained arguments regarding each of the contentions made in the Motion, and it contained citations to caselaw that Taylor believed supported denial of the Motion. However, and as relevant here, the Opposition was formatted incorrectly in that, among other things, it was single-spaced instead of double-spaced, as required by rule 10(d) of the Utah Rules of Civil Procedure. The Complaint had also been improperly spaced, yet the Lawlors, in the Motion, made no argument that the Complaint itself should be dismissed on that basis.

¶5      The Lawlors then filed a reply memorandum in support of the Motion (Reply), asserting chiefly—as they had in the Motion—that the Complaint should be dismissed because the causes of action stated therein failed to state a claim upon which

relief could be granted. In the Reply, the Lawlors also noted that, "[a]s an initial matter, the formatting of the Opposition violate[d] rule 10(d)," which mandates that "[a]ll pleadings should be double-spaced with limited exceptions." Furthermore, the Lawlors noted that Taylor, in the Opposition, twice asked for leave to amend the Complaint in the event the court found it infirm, pointing out that, pursuant to rule 7(n) of the Utah Rules of Civil Procedure, "[a] party may not make a motion in a memorandum opposing a motion or in a reply memorandum." For their part, the Lawlors followed this rule, in that they made no motion or other request—whether in the Reply or anywhere else—that the Opposition be struck as a sanction for formatting problems. Indeed, in this vein, the only relief the Lawlors sought in the Reply was for the court to "disregard any requests for relief improperly set forth in" the Opposition.

¶6      The next day, without having been asked to do so, the court entered an order striking Taylor's Opposition, stating simply that the Opposition "fail[ed] to comply with the Utah Rules of Civil Procedure." The court did not offer any details about which rules it believed the Opposition had violated. In that same order, the court stated that Taylor would have six additional days within which "to file a memorandum that complies with the Utah Rules of Civil Procedure," and it warned Taylor that if he failed to file a compliant memorandum, "the case may be dismissed."

¶7      A few days later, Taylor filed a document he styled as an amended memorandum in opposition (Amended Opposition) to the Motion, informing the court that the new document contained "procedural and formatting corrections" and that he believed it was "in compliance with" the rules.[1] The Amended Opposition

---

1. This document was attached to a motion Taylor filed asking the court to extend the six-day period within which he might be allowed to file a compliant memorandum. The district court

(continued…)

did contain several procedural and formatting changes, including (1) the addition of a section titled "Plaintiff's Preferred Disposition and Grounds," (2) the addition of a section titled "Relevant Facts," and (3) a reference to three new exhibits. But Taylor had not fixed the spacing problem—the Amended Opposition, like the original Opposition and the Complaint, was single-spaced.

¶8 In a document filed about a week later, the Lawlors offered their view that Taylor, in the Amended Opposition, had "not cure[d] the violations" of the rules and that the Amended Opposition "suffer[ed] from the same defects as" the original Opposition. In response, Taylor asserted that, "to the best of counsel's knowledge," the Amended Opposition was in compliance with applicable formatting rules. And Taylor "respectfully" asked the court, if it found "any aspect of the [Amended Opposition] to be noncompliant," to "identify the specific rule or requirement at issue so that counsel may cure the defect immediately."[2]

---

determined that Taylor had "demonstrated sufficient grounds" to be afforded more time, but it nevertheless denied the motion on the basis that allowing Taylor more time would be a futile gesture given that the Amended Opposition still did not comply with the rules. For convenience, throughout the remainder of this opinion we describe the court's denial of the motion to extend time on futility grounds as the court rejecting, or refusing to accept, the Amended Opposition.

2. In his appellate brief, Taylor states that, on the same day he submitted this response, his attorney "attempted to clarify the alleged defect by telephoning the judge's chambers" but she was told by "the judge's clerk" that "the court does not like to clarify rule deficiencies." We have no reason to doubt the accuracy of

(continued…)

¶9 About a week later, the court entered an order refusing to accept Taylor's Amended Opposition. In that order, the court noted that the original Opposition had been out of compliance with the rules and that the court had struck the Opposition and "order[ed] compliance with the rules," giving Taylor "an opportunity to correct his filings." The court observed that Taylor had "filed papers" in which he had "acknowledged" the court's order commanding compliance, an act that the court believed "demonstrate[d] that [Taylor] was aware of the order and aware of what was required of him." But the court offered its view that the Amended Opposition "still fail[ed] to comply with the Utah Rules of Civil Procedure," and it concluded therefrom that Taylor had "ignored this court's order and the mandates of the rule[s] and ha[d] provided no justification or excuse for doing so, thereby supporting that he ha[d] acted in willful and intentional disregard of th[e] court's order and the rules." Again, as in its previous order striking the original Opposition, the court did not elaborate as to which rules it believed had been violated. And although its analysis in this regard was brief, the court appeared to be invoking rule 37 of the Utah Rules of Civil Procedure as its authority for refusing to accept the Amended Opposition.

¶10 The next day, Taylor filed a motion that he styled as a "Motion for Clarification," in which he asked for "clarification from the [c]ourt as to which rule or rules the Amended Opposition fail[ed] to comply with," offering his view that "[w]ithout such clarification, [he was] unable to determine what further corrections [were] required."

¶11 Just four days later—before the Lawlors' deadline for filing any response to Taylor's motion for clarification had passed and without making any ruling on that motion—the court signed a

---

Taylor's recitation of these events, but because the telephonic exchange Taylor describes does not appear in the record submitted to us, we decline to consider it as part of our analysis.

proposed order that the Lawlors had previously submitted in connection with the Motion. That order, captioned "Order Dismissing Complaint," stated simply that because Taylor's Opposition "was stricken," the Motion was "unopposed," and on that basis Taylor's Complaint was "dismissed."

## ISSUES AND STANDARDS OF REVIEW

¶12    Taylor now appeals, challenging the district court's orders striking the Opposition and refusing to accept the Amended Opposition, as well as the subsequent order dismissing the Complaint. Regarding the first two orders, the issue—as correctly framed by the Lawlors—is whether the court exceeded its authority in refusing to accept Taylor's memoranda.[3] And regarding the order dismissing his Complaint, Taylor asserts that the court's sole justification for dismissal was the fact that the Motion was unopposed due to his memoranda having been rejected, and he argues that if the orders rejecting his memoranda are reversed, then the order of dismissal must likewise be

---

3. Regarding the court's orders rejecting his memoranda, Taylor also asserts constitutional claims concerning procedural due process and access to the courts. But we agree with the Lawlors that these issues are unpreserved for appellate review because they were never brought to the district court's attention. *See State v. Repsher*, 2025 UT App 50, ¶ 34, 568 P.3d 1095 ("Any issue brought on appeal must be sufficiently raised to a level of consciousness before the [district] court such that the court has an opportunity to rule on it." (cleaned up)). And Taylor does not argue that we should review these claims under an exception to the preservation rule, so we decline to address these claims further. *See State v. Skinner*, 2020 UT App 3, ¶ 23, 457 P.3d 421 ("Appellate courts generally will not consider an issue unless it has been preserved for appeal." (cleaned up)).

reversed. Thus, this appeal turns entirely on whether the court exceeded its authority in refusing to accept Taylor's memoranda.

¶13 On that score, there are two issues at play: (1) the district court's interpretation of various rules of civil procedure and (2) the court's choice of sanction. On the first point, we review a district court's rule interpretation for correctness. *See Skolnick v. Exodus Healthcare Network, PLLC*, 2018 UT App 209, ¶ 11, 437 P.3d 584 ("The interpretation of a rule of procedure is a question of law that we review for correctness." (cleaned up)). And on the second point, we review a district court's choice of sanction for abuse of discretion. *See Bailey v. Bailey*, 2024 UT App 51, ¶ 22, 548 P.3d 519 ("When a district court's interpretation of the applicable rules is correct, we extend a great deal of deference to the court's decisions regarding its choice of sanctions, and we will only disturb such rulings if abuse of discretion is clearly shown." (cleaned up)). And in this context, "an abuse of discretion may be demonstrated by showing that the district court relied on an erroneous conclusion of law." *Ford v. Ford*, 2016 UT App 127, ¶ 4, 379 P.3d 14 (cleaned up).

## ANALYSIS

¶14 As noted, Taylor's appeal turns on whether the district court exceeded its authority in striking his Opposition and in refusing to accept his Amended Opposition, both for failing to "comply with the Utah Rules of Civil Procedure." In neither of its two orders did the district court specify which rule or rules it believed Taylor had violated. But from the parties' briefing, both before the district court and here on appeal, it appears clear that the parties are under the impression that the court refused to accept Taylor's memoranda because they were single-spaced instead of double-spaced, as required by rule 10(d) of the Utah Rules of Civil Procedure. Thus, the question presented here, at its most basic level, is whether the district court exceeded its

authority by striking Taylor's Opposition, and by refusing to accept his Amended Opposition, because those memoranda were single-spaced. On this record, we conclude that the reasons the court gave are not supported by rule and that the court's orders therefore exceeded its authority.

¶15    In its order refusing to accept the Amended Opposition, the district court referred to rule 37 of the Utah Rules of Civil Procedure, and (although it is not entirely clear) we infer that the court intended to use that rule as the basis for its order sanctioning Taylor. But that rule is inapplicable here. By its plain terms, rule 37 applies only to situations involving discovery orders. Subsection (a) of that rule concerns "order[s] regarding any discovery issue," and those are the orders referred to in subsection (b), which allows a court to "impose appropriate sanctions for the failure to follow its orders." *See* Utah R. Civ. P. 37(a), (b); *see also Cook Martin Poulson PC v. Smith*, 2026 UT App 54, ¶ 36 ("Rule 37 allows a district court to impose sanctions in response to a party's violation of a discovery order."); *Eskamani v. Auto-Owners Ins. Co.*, 2020 UT App 137, ¶ 49, 476 P.3d 542 ("Rule 37 outlines the procedure for resolving discovery disputes."). Here, discovery had not even opened, and no discovery orders had been issued. The order the district court felt was violated was not a discovery order; rather, that order was the one in which the court struck the Opposition and offered Taylor the chance "to file a memorandum that complies with the Utah Rules of Civil Procedure."[4]

¶16    Moreover, one of the prerequisites to a court imposing sanctions under rule 37 is that there be a "motion" seeking that relief. *See* Utah R. Civ. P. 37(b) (stating that "the court, *upon motion*, may impose appropriate sanctions" (emphasis added)); *see also Cook Martin Poulson*, 2026 UT App 54, ¶ 37 (stating that one of

---

4. Indeed, that part of the order wasn't really an order at all—it didn't *command* Taylor to file anything, it simply offered him the opportunity to do so if he wished.

"three prerequisites to" a court's imposition of a rule 37 sanction is that "the sanction must be imposed upon motion" (cleaned up)). Here, the Lawlors made no motion asking the court to strike Taylor's Opposition for being single-spaced, nor did they ever invoke rule 37 or seek any other sanction.

¶17    For these reasons, rule 37 did not give the district court any authority, in this situation, to sanction Taylor by refusing to accept his memoranda for being single-spaced.[5]

¶18    The court did not invoke rule 10 as a possible source of sanctions power. But that rule is worth examining here because it is the source of the underlying problem with Taylor's memoranda. Subsection (d) of that rule concerns "[p]aper format," and it requires (among other things) that papers filed with the court be on certain-sized paper, have certain-sized margins, and "be double-spaced, except for matters customarily single-spaced" such as footnotes and block quotes. *See* Utah R. Civ. P. 10(d). But nothing in rule 10 allows a court to reject a

---

5. Moreover, rule 37 sanctions are warranted only "when (1) the party's behavior was willful; (2) the party has acted in bad faith; (3) the court can attribute some fault to the party; or (4) the party has engaged in persistent dilatory tactics tending to frustrate the judicial process." *Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 25, 199 P.3d 957 (cleaned up). Here, the court found that Taylor had "acted in willful and intentional disregard of" its order. Taylor does not directly challenge this finding, and we therefore make no conclusive determination as to its correctness. To our eye, however, Taylor's actions look a lot more like ignorance than willfulness, especially given his and his attorney's apparent efforts to learn what the problem was and address it, and given the court's apparent disinclination to specify exactly how Taylor's memoranda were out of compliance.

party's memorandum—and thus refuse to consider the merits of its claims—simply for noncompliance with rule 10(d).

¶19 Indeed, a later subsection offers instruction to courts as to what should happen when papers are "not prepared in conformity with paragraphs (a) through (e)." *See id.* R. 10(f). In that event, "the clerk" of the court "*must accept the filing* but may require counsel to substitute properly prepared papers for nonconforming papers." *Id.* (emphasis added). And "[f]or good cause shown, the court may relieve any party of any requirement of this rule." *Id.* Nothing in subsection (f)—which requires court clerks to "accept" nonconforming filings—authorizes courts to reject papers that are filed single-spaced. *See id.* Indeed, we have held that rule 10(f) "expressly precludes [any] fatal effect on nonconforming papers." *Willowbrook Homeowners Ass'n, Inc. v. Greco*, 2004 UT App 390U, para. 4.

¶20 Subsection (h) of the rule does provide courts with the authority to "strike and disregard all or any part of a pleading or other paper" filed with the court, but only if the paper "contains redundant, immaterial, impertinent, or scandalous matter." Utah R. Civ. P. 10(h). Here, the district court did not invoke rule 10(h) or make any determination that Taylor's memoranda included "redundant, immaterial, impertinent, or scandalous matter." *See id.* And the Lawlors have never contended that Taylor's memoranda contained any such matter. Thus, the only part of rule 10 that allows a court to strike a memorandum doesn't apply here.

¶21 In the end, the only two rules even obliquely invoked by the district court don't allow for the sort of sanctions the court imposed here. And the court didn't offer any other basis for the

imposition of sanctions.[6] For this reason, the court's orders refusing to accept Taylor's memoranda are infirm.

¶22 None of this is to say that there aren't other sources of authority that courts might use to sanction or punish parties that fail to comply with procedural rules, provided that the situation warrants it. Courts have contempt power by which they can punish litigants who fail to comply with court orders. *See* Utah Code § 78B-6-301; *see also Rosser v. Rosser*, 2021 UT 71, ¶ 38, 502 P.3d 294 (discussing both statutory and inherent contempt power). And courts have "the inherent authority to strike a party's pleadings and enter a default judgment if the party engages in conduct designed to improperly influence the court's decision on the merits of the case, such as perjury or obstruction of justice, or

---

6. The Lawlors briefly speculate that the district court might also have found problematic Taylor's apparent violation of rule 7(n), which forbids litigants from making "a motion in a memorandum opposing a motion or in a reply memorandum." *See* Utah R. Civ. P. 7(n). Nothing in the court's orders hints at this; to the contrary, the court used a singular noun when it stated that Taylor "ignored . . . the mandates of the *rule*" (emphasis added), an apparent reference to rule 10(d). But in any event, the appropriate recourse for a rule 7(n) violation is exactly what the Lawlors requested: for the court to simply ignore the improper request. *See Compagni v. Klemesrud*, 2025 UT App 71, ¶ 16 n.6, 571 P.3d 803 (noting that "the district court properly declined to address the spoliation motion and supporting arguments" made in an opposition to a motion for summary judgment). There is no support in rule 7(n) for the notion that an opposition or a reply memorandum is subject to being struck for the inclusion of an unauthorized motion. Thus, even if the court had intended to refer to rule 7(n) violations by its vague reference to Taylor's non-compliance "with the Utah Rules of Civil Procedure," such violations could not have served as a basis for refusing to accept Taylor's memoranda.

if the conduct itself tends to demonstrate bad faith or a lack of merit." *Chen v. Stewart*, 2005 UT 68, ¶ 43, 123 P.3d 416. In addition, the rules allow courts to punish truly frustrating litigants by finding them to be "vexatious." *See* Utah R. Civ. P. 83. But the district court here did not purport to be drawing upon these sources of authority, and it certainly made no express findings to support invocation of any of these powers.

¶23 In exercising these and other powers to sanction litigants for failure to comply with formatting rules such as rule 10(d), courts should keep in mind our supreme court's admonition that the "general philosophy" of our rules of procedure "is that liberality should be indulged 'to secure the just, speedy, and inexpensive determination of every action.'" *See Bunting Tractor Co. v. Emmett D. Ford Contractors*, 272 P.2d 191, 192 (Utah 1954) (quoting Utah R. Civ. P. 1 (1954)); *see also Cowley v. Porter*, 2005 UT App 518, ¶ 37, 127 P.3d 1224 ("The fundamental purpose of the[] rules is to liberalize both pleading and procedure to the end that the parties are afforded the privilege of presenting whatever legitimate contentions they have pertaining to their dispute." (cleaned up)). "In construing and applying these rules it should be the purpose of the courts to afford litigants every reasonable opportunity to be heard on the merits of their cases." *Bunting Tractor*, 272 P.2d at 192; *see also Gillman v. Gillman*, 2021 UT 33, ¶ 50, 493 P.3d 655 ("Adjudication on the merits is preferred . . . ."); *Cougar Canyon Loan LLC v. Walker*, 2020 UT App 176, ¶ 22, 482 P.3d 227 ("Our legal system strongly prefers to decide cases on their merits." (cleaned up)). And courts should be especially cautious in imposing penalties that amount to *terminating* sanctions for rule violations regarding the form of papers filed with the court. On this point, our supreme court has required a showing of prejudice before any such sanction should be considered. *See Bunting Tractor*, 272 P.2d at 192 (stating that "deviation from form and procedure shall not work a forfeiture of substantive rights in the absence of prejudice to the opposing party"). Here, the Lawlors

were not prejudiced by the fact that Taylor's memoranda were single-spaced: they were, in the Reply, able to fully respond to each of Taylor's arguments, and they do not contend otherwise.[7]

CONCLUSION

¶24 In this case, the justifications offered by the district court for its orders rejecting Taylor's memoranda are insufficient. Neither rule 37 nor rule 10 afford the court the authority to reject Taylor's memoranda for being single-spaced. And the court did not invoke any other source of authority for its orders. Nor did it make a determination that the Lawlors were prejudiced by the formatting problems with Taylor's memoranda. We therefore conclude that the court exceeded its authority when it refused to accept Taylor's memoranda. We reverse those orders, along with the court's follow-on order dismissing Taylor's Complaint, and we remand this case to the district court for further proceedings consistent with this opinion.

———————

7. We are also puzzled by the court's apparent unwillingness to tell Taylor (and his attorney) what the problem was with the submitted memoranda. Rule 10 itself appears to envision that parties who submit nonconforming papers will be told why the papers are nonconforming and be given the opportunity to "substitute properly prepared papers." *See* Utah R. Civ. P. 10(f). While attorneys certainly have an obligation to familiarize themselves with our rules of procedure, including the formatting directives outlined in rule 10, litigants and lawyers should not be sanctioned—much less with sanctions that effectively dismiss a complaint—for a formatting problem unless and until they are aware of what the specific formatting problem is and willfully refuse to fix it.